ROBERT C. MASON, Respondent, v STATE OF NEW YORK, Appellant.

Third Department, May 14, 1992

## APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Michael S. Buskus* of counsel), for appellant.

*Seymour Fox (Robert Bugbee* of counsel), for respondent.

### OPINION OF THE COURT

MAHONEY, J.

This personal injury action against the State arises out of claimant's fall over uneven and broken pavement around a storm drain located in a paved culvert adjacent to State Route 150 in the Village of Castleton-on-Hudson, Rensselaer County. The essence of claimant's claim is that the State was negligent in designing, constructing and maintaining the culvert. During the trial held solely on the issue of liability, it was established that Route 150 was a State road and that the adjacent culvert was within the State's right-of-way. While the culvert and storm drain apparently were constructed originally by the State, the date of initial construction is unclear. State officials did indicate that they were not constructed within the past 25 years, however. Other than a repaving of the culvert in 1981 in conjunction with resurfacing of Route 150, the State took no action with regard to the maintenance of this drainage system.

State officials conceded that the presence of uneven and broken pavement in the gutter area was a violation of the maintenance guidelines adopted by the Department of Transportation but argued that, as made clear by a 1970 amendment to Highway Law § 46 (see, L 1970, ch 628), maintenance of the culvert was the responsibility of the Village, not the State. In support of this position the State submitted into evidence a 1971 Department of Transportation memorandum interpreting the 1970 amendment to Highway Law § 46 as absolving the State of responsibility for maintaining drainage ditches and storm sewer facilities adjacent to and serving State roadways which were in existence prior to January 1, 1971, the effective date of the amendment, unless after that date it reconstructs or undertakes major rehabilitation of these facilities in connection with improvement of the State highway. According to the State, because the culvert and drain were in existence prior to January 1, 1971 and because its repaving of the culvert did not constitute construction, reconstruction or major rehabilitation, it could not be held liable for the deteriorated condition.

At the conclusion of the evidence, the State moved to dismiss the claim on this basis. Concluding that the 1970 amendment to Highway Law § 46 did not apply only to

construction, reconstruction or rehabilitation of drainage facilities which occurred after the effective date of the amendment but, rather, to *any* storm facility constructed primarily to service State highways regardless of when constructed, the Court of Claims found the State liable for maintenance of the subject gutter, denied the State's motion and entered an interlocutory judgment in claimant's favor on the issue of liability. The State appeals.

Prior to the 1970 amendment, Highway Law § 46 provided, in pertinent part, as follows:

"A state highway may be constructed, reconstructed or improved through a village so as to form a continuous highway on the state highway system * * *

"[T]he plans, specifications and estimate of cost of such construction, reconstruction or improvement * * * may * * * include the installation, construction, re-construction and improvement of curbs, drainage facilities and retaining walls to protect pavements * * *

"Any sidewalks, sewers, water-mains, conduits, facilities and appurtenances that are provided pursuant to this section, shall be maintained or shall be continued to be maintained, as the case may be, by the village in which they are located" (L 1945, ch 752, § 1).

Accordingly, prior to 1971 the responsibility for maintaining drainage facilities and areas outside the traveled or commonly used portions of the highway fell upon the village wherein the roadway was located *(cf.,* Highway Law § 58). The 1970 amendment reaffirmed the State's obligation to maintain the pavement area of highways passing through villages, and clarified the State's obligations with regard to maintenance of right-of-way areas, providing that "the state * * * may assume maintenance responsibility and have jurisdiction over such other highway right of way areas as the commissioner of transportation shall determine, by official order, are necessary for the maintenance and protection of such highway facility" (L 1970, ch 628, § 1). In addition, while the Legislature continued the villages' primary duty to maintain curbs and paved gutters, it expressly required the State to *"maintain any drainage ditches and storm sewer facilities which are constructed primarily to service the state highway facility"* (L 1970, ch 628, § 1 [emphasis supplied]).

Recently, we have recognized that the above-emphasized language was intended to be prospective in nature, applying

only to drainage ditches or storm sewer facilities constructed after the effective date of the amendment, i.e., January 1, 1971 *(Washington County Sewer Dist. No. 2 v White,* 177 AD2d 204, 206). We reaffirm that interpretation adding only our belief, based upon an examination of the legislative history, that the amendment includes within its ambit not only drainage facilities *newly constructed* after the effective date but also those in existence prior to the effective date and reconstructed or substantially rehabilitated after such date in connection with improvement of a State highway *(see,* mem of Dept of Transp, Bill Jacket, L 1970, ch 628).

It being clear from the evidence presented that the gutter and storm drain involved herein were constructed prior to 1971, applicability of the amendment depends upon whether the 1981 repaving of the gutter constituted reconstruction or rehabilitation thereof. We believe it did not. While the repaving of the culvert was incident to a repaving of Route 150, there is absolutely no indication from the testimony that modernization or correction of the culvert or drainage system, which is the *sine qua non* of a reconstruction or rehabilitation, was intended.

The 1970 amendment to Highway Law § 46 being thus inapplicable, and it being clear that there was no assumption of a duty by the State to maintain the culvert, the responsibility for its maintenance rests with the Village, not the State *(see,* Highway Law § 46; mem of Dept of Transp, Bill Jacket, L 1970, ch 628; *see also,* 1985 Atty Gen [Inf Opns] 116).

WEISS, P. J., YESAWICH JR., CASEY and HARVEY, JJ., concur.

Ordered that the judgment is reversed, on the law, without costs, and claim dismissed.